

# THE ATTORNEY GENERAL
## OF TEXAS

March 31, 1987

**JIM MATTOX**
**ATTORNEY GENERAL**

Mr. O. P. (Bob) Bobbitt
Executive Director
Texas Department on Aging
P. O. Box 12786
Austin, Texas   78711

Opinion No.  JM-664

Re:   Whether a contract for the storage and delivery of U.S. Department of Agricultural Commodity foods falls under the jurisdiction of the Texas Railroad Commission

Dear Mr. Bobbitt:

You inform us that the Food Services Division of the Texas Department of Human Services (DHS) is the authorized distribution agency for United States Department of Agriculture (USDA) commodity foods. The Department of Human Services seeks to enter into contracts, specifically with commercial food distribution companies, to receive shipments of USDA commodity foods into the state, to store and manage inventories, and to deliver them at no charge to local agencies for distribution. You ask whether the receipt, storage, and handling of USDA food by commercial food distribution companies under contract provisions that require delivery without charge would fall under the jurisdiction of the Texas Railroad Commission. Under the specific facts that you have submitted, we conclude that such carriers are not subject to the Railroad Commission's jurisdiction.

Article 911b, V.T.C.S., reposes in the Texas Railroad Commission very broad authority to regulate intrastate motor carriers. Section 4(a) provides the following in pertinent part:

> Sec. 4.  (a)  The Commission is hereby vested with power and authority and it is hereby made its duty to supervise and regulate the transportation of property <u>for compensation or hire</u> by motor vehicle on any public highway in this State, to fix, prescribe or approve the maximum or minimum or maximum and minimum rates, fares and charges of each motor carrier in accordance with the specific provisions herein contained, to prescribe all rules and regulations necessary for the government of motor carriers, to prescribe rules and regulations for the safety of operations of each of such motor carriers, to require the filing of such

> monthly, annual or other reports and other data of motor carriers as the Commission may deem necessary, to prescribe the schedules and services of motor carriers operating as common carriers, and to supervise and regulate motor carriers in all matters affecting the relationship between such carriers and the shipping public whether herein specifically mentioned or not. . . . (Emphasis added).

"Motor carrier" is defined, in pertinent part, at section 1(g) of article 911b, V.T.C.S.:

> (g) The term 'motor carrier' means any person, firm, corporation, company, copartnership, association or joint stock association, and their lessees, receivers, or trustees appointed by any court whatsoever owning, controlling, managing, operating, or causing to be operated any motor-propelled vehicle used in transporting property for compensation or hire over any public highway in this state, where in the course of such transportation a highway between two or more incorporated cities, towns or villages is traversed. . . . (Emphasis added).

Subsection 1(h) provides that

> [t]he term 'contract carrier' means any motor carrier as hereinabove defined transporting property for compensation or hire over any highway in this State other than as a common carrier. (Emphasis added).

Article 911b, V.T.C.S., does not define "common carrier," but the courts have:

> 'Common carrier' designates a person engaged in transporting people or things from place to place for hire, and who holds himself out to the public to do so for so long as he has room to carry the cargo tendered to him. (First emphasis added, second in original).

Railroad Commission of Texas v. United Parcel Service, Inc., 614 S.W.2d 903, 910 (Tex. Civ. App. - Austin), aff'd, 629 S.W.2d 33 (Tex. 1981).

Article 911b, V.T.C.S., provides relevant exceptions to the reach of the act. Section 1a sets forth exceptions to the statutory definitions of the phrases "motor carrier," "contract carrier," and "transporting property for compensation or hire." The section provides in relevant part:

> Sec. 1a. (1) Provided, however, that the term 'Motor Carrier' and the term 'Contract Carrier' as defined in the preceding Section shall not be held to include:
>
> (a) Any person having a regular, separate, fixed, and established place of business, other than a transportation business, where goods, wares, and merchandise are kept in stock and are primarily and regularly bought from the public or sold to the public or manufactured or processed by such person in the ordinary course of the mercantile, manufacturing, or processing business, and who, merely incidental to the operation of such business, transports over the highways of this State such goods of which such person is the bona fide owner by means of a motor vehicle of which such person is the bona fide owner. . . . (Emphasis added).

Section 1b sets forth the following:

> Sec. 1b. Any person who transports goods, wares, or merchandise under the circumstances set forth in the foregoing Section 1a so as to be excluded by the terms of said Section from the definition of 'motor carrier' or 'contract carrier' shall be deemed to be a private motor vehicle owner; and such use of the highways by such private motor vehicle owners, as herein defined, shall be construed as use of the highways for the general public and not the use of such highways for the carrying on the business of transporting property for compensation or hire.

You inform us that, by the phrase "commercial food distribution companies," you refer, not to a common or contract carrier, but rather to a company that has an established place of business where food is kept in stock and is primarily sold to the public in the ordinary course of business, and who, incidental to the operation of the business, transports the goods that it owns by means of motor vehicles that it owns. You wish to know whether such a carrier would be subject to the jurisdiction of the Railroad Commission in an instance

in which the carrier enters into a contract for no compensation to deliver goods that it does not own, and in a way that is not incidental to the operation of its business. We conclude that the answer is "no."

In a factual situation that is materially similar to the one that you present, the courts concluded that the subject company did not fall within the reach of the commission's regulatory authority. In State v. Wiergate Lumber Company, Inc., 582 S.W.2d 258 (Tex. Civ. App. - Beaumont 1979, writ ref'd n.r.e.), the state sought to enjoin under article 911b, V.T.C.S., the operation of a manufacturer and seller of lumber and lumber by-products. The trial court found, as matters of fact, that the manufacturer had a regular and established place of business, that such business was not a transportation business, that the products delivered were manufactured in the ordinary course of business, that the manufacturer transported the goods in a way that was merely incidental to the operation of its business, that the manufacturer was the owner of such goods when the goods were being transported, and that the goods were transported by means of motor vehicles that were owned by the manufacturer. The trial court concluded that, as a matter of law, the manufacturer was neither a "motor carrier" nor a "contract carrier" under the terms of section 1a(1)(a) of article 911b, V.T.C.S. Hence, the manufacturer was not subject to the jurisdiction of the commission. The appellate courts affirmed the trial court's holding.

Under section 1a(1)(a) of article 911b, V.T.C.S., if the company with which DHS seeks to contract is not, in the normal course of its business, a "common carrier" or a "contract carrier," the company would be a "private motor vehicle owner" under the terms of section 1b of article 911b, V.T.C.S., and would not be subject to the jurisdiction of the Railroad Commission. DHS seeks to enter into a contract for no compensation with such a company to deliver goods that it does not own and in a way that is not incidental to the operation of its business. So long as the contract entered into provides that there be no compensation for transportation, the company will not be "transporting property for compensation or hire" and will not thereby become a "contract carrier" subject to the jurisdiction of the Railroad Commission.

## S U M M A R Y

By the very terms of section 1a(1)(a), article 911b, V.T.C.S., any person who has a regular and established place of business that is not a trans- portation business and who delivers, in a way that is merely incidental to the operation of its business, goods that it owns in motor vehicles that it owns is neither a "common carrier" nor a

"contract carrier." Such a person is a "private motor vehicle owner" under section lb of article 911b, V.T.C.S., and is not subject to the jurisdiction of the Railroad Commission. As long as the contract entered into between DHS and the food distribution company provides that there be no compensation for transportation, the company will not be "transporting property for compensation or hire," and will thereby not become a "contract carrier" subject to Railroad Commission jurisdiction.

Very truly yours

JIM MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jim Moellinger
Assistant Attorney General